IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE NORTH FACE APPAREL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) Case No. 09-CV-02029 | |
| WILLIAMS PHARMACY, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S PRE-HEARING MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

This is an action for trademark infringement, dilution and unfair competition under federal and state law. For more than forty years, Plaintiff The North Face Apparel Corp. ("Plaintiff" or "The North Face") has created, marketed and sold outdoor adventure equipment and apparel of the highest quality under its distinctive trademarks, which include the word marks THE NORTH FACE and NEVER STOP EXPLORING; a stylized representation of the silhouette of Yosemite's Half Dome peak (the "Half Dome Design Mark"); and a composite mark comprising the THE NORTH FACE and the Half Dome Design Mark (the "Composite Mark"). These federally-registered trademarks are famous, instantly recognizable trademarks (collectively, the "THE NORTH FACE Trademarks") and are uniquely associated with Plaintiff and its exceptional products.

Defendants are marketing and selling competing apparel that not only bear trademarks confusingly similar to Plaintiff's THE NORTH FACE Trademarks—but also directly knock off Plaintiff's trade dress, including its iconic Denali-style fleece jacket, as shown in the side-by-side comparison below:

**THE NORTH FACE® Jacket**     **THE SOUTH BUTT Jacket**

     

Although Defendants claim to be parodists, their conduct reveals them as run-of-the-mill infringers looking to profit from Plaintiff's goodwill.  In response to Plaintiff's objections to Defendants' use of the THE NORTH FACE Trademarks, Defendants Winkelman and The South Butt offered to sell their business to Plaintiff for one million dollars—and then yanked that offer after their sales jumped.  So, too, they seek to register THE SOUTH BUTT as a mark in the U.S. Patent and Trademark Office ("USPTO") in the same categories of *commercial* goods as those of Plaintiff's federal trademarks.

Finally, Defendants are shamelessly exploiting this lawsuit as a marketing opportunity. For example, on December 14, 2009, Defendants Winkelman and The South Butt (together, "The South Butt Defendants") posted this announcement on their website, www.thesouthbutt.com (the "The South Butt Website"), beneath the headline "WE'RE BEING SUED!":

> News came Friday afternoon that The North Face has decided to take us to court! Now, more than ever, we need your support as we prepare for the upcoming events. We're stocked up and ready for the Holiday rush that is about to take place because of this news – please get your Christmas orders in ASAP!

On that same day, their attorney, Albert S. Watkins, issued his own press release, available for viewing at The South Butt Website.  In that press release, Mr. Watkins quotes himself as follows (emphasis added):

2

> "***The South Butt is excited and full of holiday glee in anticipation of addressing this matter in a public forum and will continue to vigorously market and meet the needs of the growing demand for its products.*** The company employs a handful of individuals. Perhaps North Face should consider embracing its parent company's stated commitment to 'consideration and respect,' applaud the spirit and diligence of this young man, adopt some corporate anger management protocol, and save some money on unnecessary legal fees in the process," concluded Watkins.

Since these ramped-up activities are damaging the goodwill and distinctiveness of the THE NORTH FACE® brand and trademarks, Plaintiff has no option but to seek a preliminary injunction to halt the irreparable harm Defendants are willfully—indeed, gleefully—committing.

## SUMMARY OF PERTINENT FACTS[1]

### The North Face Trademarks and Products

The North Face (including its predecessors in interest and associated companies) has advertised and sold high-quality outdoor apparel and equipment for more than forty years under the THE NORTH FACE Trademarks, copies of which are attached to the Complaint as Exhibit A. The THE NORTH FACE Trademarks (both registered and common law) are featured on a broad range of apparel and equipment sold throughout the United States and the world. The evidence will demonstrate that Plaintiff has spent hundreds of millions of dollars in advertising and promoting the THE NORTH FACE Trademarks in connection with THE NORTH FACE® products, which have generated billions of dollars in sales. Consumers, potential consumers and the public in general not only associate THE NORTH FACE® products with exceptional materials, style and workmanship, but also recognize that THE NORTH FACE® products

---

[1] Plaintiff will submit affidavits and exhibits in support of its motion for a preliminary injunction after limited and focused discovery on the preliminary injunction issues has been completed. The submission of one comprehensive set of materials at such time will obviate the Court's need to review two overlapping submissions: one now and a revised and updated version after discovery has been completed. However, should the Court prefer such materials now, Plaintiff is prepared to submit them promptly.

originate exclusively with The North Face.  By any measure, the THE NORTH FACE Trademarks are distinctive and famous.

**Defendants' Infringing Acts**

Defendants manufacture, advertise, distribute, and sell a directly competitive line of apparel items, some of which are shown below.  On and in connection with these items, Defendants have adopted and use two word marks, THE SOUTH BUTT and NEVER STOP RELAXING, as well as a direct knock-off of the Half Dome Design Mark (together, the "THE SOUTH BUTT Trademarks")—all plainly intended to bring to mind the THE NORTH FACE Trademarks:



Defendants promote and offer these apparel items (the "Infringing Products") for sale on The South Butt Website, at Defendant Williams Pharmacy's locations throughout St. Louis County, and on the Williams Pharmacy website, www.williamspharmacy.com.  They recently announced their intention to make the Infringing Products available nationwide by spring of 2010 (*see* Cmplt., Exh. K).  Williams Pharmacy also acts as fulfillment agent and distributor for the The South Butt Defendants, packing and shipping all orders, whether received by phone or on-line.  Defendants also promote the Infringing Products on the popular social networking sites Facebook (at www.facebook.com/pages/South-Butt/276080795511) and Twitter (at www.twitter.com/thesouthbutt).

**Defendants' Attempts to Register the THE SOUTH BUTT as a Trademark**

In November 2008, the The South Butt Defendants filed an application with the USPTO to register the following THE SOUTH BUTT composite text and design mark in Class 35 (Serial No. 77/617,979) (Cmplt., Exh. D):



Plaintiff learned of that application on August 4, 2009, when the USPTO published it for opposition, and promptly contacted the The South Butt Defendants to request that they cease use of that trademark and to stop manufacturing, distributing and offering for sale items bearing that trademark. (*Id*., Exh. E.) On September 10, 2009—after The North Face had filed an opposition in the USPTO to that application—the The South Butt Defendants' counsel responded, rejecting The North Face's request and offering to sell the THE SOUTH BUTT business, including its alleged trademarks, "for the sum of $1,000,000.00." (*Id*., Exh. F.) Shortly thereafter, The South Butt Defendants withdrew that application but filed a second one with the USPTO, this time seeking to register THE SOUTH BUTT as a word-only mark in Class 25 for "jackets; shirts; shorts." (Serial No. 77/840,757). (*Id*., Exh. G.)

**ARGUMENT**

In deciding whether to enter a preliminary injunction, Courts should consider: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL*

5

*Systems*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998). Here, all of the factors weigh heavily in favor of an injunction.

## I.   PLAINTIFF IS BEING IRREPARABLY HARMED BY DEFENDANTS' SALE OF INFRINGING PRODUCTS

Irreparable harm may be presumed in a trademark infringement action from a showing that the movant will succeed on the merits, *Clorox*, *supra*, 140 F.3d at 1183, because damage to a trademark owner through diminished goodwill, loss of control over reputation, and loss of quality control caused by a likelihood of confusion is irreparable, and such irreparable injury is sufficient for the grant of a preliminary injunction. *See, e.g., Mutual of Omaha Ins. Co. v. Novak*, 775 F.2d 247, 249 (8th Cir. 1985). Because a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury may be presumed if a movant demonstrates a likelihood of confusion. *See Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 and n. 7 (8th Cir. 1980); *Bebe Stores, Inc. v. May Dept. Stores Intern., Inc.*, 230 F. Supp. 2d 980, 995 (E.D. Mo. 2002) ("Where likelihood of success on the merits has been shown in a trademark infringement action, the threat of irreparable harm may be presumed") *aff'd*, 313 F.3d 1056 (8th Cir. 2002). Here, Plaintiff can plainly establish a likelihood of success.

## II.   PLAINTIFF WILL SUCCEED ON THE MERITS

### A.   A Preliminary Word About Parody

Before turning to the merits, it is important to address the The South Butt Defendants' contention that the Infringing Products constitute a non-actionable parody of the THE NORTH FACE Trademarks. Defendants are wrong on both the law and the facts.

Parody is not a defense to trademark infringement; it is simply another factor to assess in

evaluating likelihood of confusion. Eighth Circuit law is clear: "A parody creating a likelihood of confusion may be subject to a trademark infringement action." *Anheuser Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 776 (8th Cir. 1994). Indeed, in finding that a parody Michelob ad nonetheless infringed the brewer's trademarks, the *Balducci* court, 28 F.3d at 774, relied upon appellate decisions across the nation upholding trademark infringement judgments notwithstanding parody arguments far more viable than Defendants' attempt here, including the "Mutant of Omaha" decision in *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987) and the "Debbie Does Dallas" decision in *Dallas Cowboy Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200 (2d Cir. 1979).

More recently in this District, Judge Mummert entered a preliminary injunction halting the promotion and sale of "Buttwiper" dog chew toys, finding that they infringed Anheuser-Busch's BUDWEISER trademarks. In rejecting the defendant's parody contention, the court stated:

> "[T]he cry of 'parody!' does not magically fend off otherwise legitimate claims of trademark infringement or dilution. There are confusing parodies and non-confusing parodies. All they have in common is an attempt at humor through the use of someone else's trademark. A non-infringing parody is merely amusing, not confusing."

*Anheuser-Busch, Inc. v. VIP Products, LLC,* No. 08 CV 0358, 2008 WL 4619702, at *8 (E.D. Mo. Oct. 16, 2008) (quoting *Dr. Seuss Enters., L.P. v. Penguin Books, USA,* 109 F.3d 1394, 1406 (9th Cir. 1997)).

Highlighting the emptiness of the so-called parody defense here is the recent trademark appellate decision in *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.2d 252 (4th Cir. 2007). At issue there was a dog toy called the Chewy Vuiton, which poked fun at luxury LOUIS VUITTON handbags that sell for thousands of dollars. In finding no likelihood of confusion, the Fourth Circuit stressed that, unlike here, the *Louis Vuitton* defendants' products—

7

dog toys—were distinct from plaintiff's luxury handbags and that there was a significant cost difference between plaintiff's high-end goods and defendant's dog toys. *Louis Vuitton,* supra, 507 F.3d at 260-63.

Applying the Fourth Circuit's parody standards, Judge Mummert in *Anheuser-Busch v. VIP Products, supra,* rejected the defendant's position that its "Buttwiper" dog toy was a non-confusing parody of plaintiff's BUDWEISER trademark. Judge Mummert recognized—in contrast to the facts in *Louis Vuitton*—that Anheuser-Busch **did** sell pet-related items under its BUDWEISER trademark, and sold them within a similar price range. In language fully applicable here, the Court held that "courts are most vigilant to guard against a likelihood of confusion when the plaintiff and the defendant use their marks **on directly competing products**." *Id.* at *9 (quoting *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 412 (S.D.N.Y. 2002) (emphasis added). There can be no dispute that, here, Defendants are selling a product that they have intentionally designed to **look virtually identical** to Plaintiff's well-known and iconic Denali-style jacket. (*See* images at page 2, *supra*.) So, too, Defendants' other Infringing Products, including t-shirts, knit caps, and shorts, directly compete with Plaintiff's products under the THE NORTH FACE Trademarks.

Nor can parody be a defense in a trademark dilution case if the infringing trademarks are used "as a designation of source for the competing products themselves." 15 U.S.C. § 1125(c)(3). That is precisely how the Defendants are using their knock-off marks and designs. Earlier this month in *Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, No. 08-3331-cv, 2009 WL 4349537, at *9 (2d Cir. Dec. 3, 2009), the Second Circuit rejected the defendant coffee company's parody defense to the claim that its use of CHARBUCKS diluted plaintiff's STARBUCKS marks for coffee products. The Court held that defendant's actions "cannot

qualify under the parody exception because the Charbucks Marks are used as a designation for [defendant's] own goods, i.e., the Charbucks line of coffee." The same result obtains *a fortiori* here: Defendants intended, and continue, to use the THE SOUTH BUTT word mark and design as designations of source of origin. Indeed, they continue to seek federal trademark registration for THE SOUTH BUTT for the same products for which the THE NORTH FACE Trademarks are registered and on which they have long been used.

In short, the facts and the law refute Defendants' attempt to wrap themselves in the cloak of parody. Instead, they are merely the latest in a series of knock-off artists seeking to profit off of the accomplishments of others.

### B. Plaintiff Will Prevail On Its Infringement and Unfair Competition Claims

To prevail on its infringement and unfair competition claims under the Lanham Act and corresponding state and common law claims,[2] Plaintiff must prove: (1) it has rights senior to Defendants in the THE NORTH FACE Trademarks, and (2) there is a likelihood of confusion between the THE NORTH FACE Trademarks and Defendants' trademarks as used or intended to be used in the marketplace. *Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997); *Bebe Stores*, *supra,* 230 F. Supp. 2d 980, 991.

#### 1. *The THE NORTH FACE Trademarks Are Valid and Protectable*

There can be no dispute that Plaintiff owns federal registrations for the THE NORTH FACE Trademarks, including at least one with a date of first use in interstate commerce going back to 1968. These registrations are *prima facie* evidence of: the validity of the trademarks Plaintiff seeks to protect and Plaintiff's exclusive rights to use the THE NORTH FACE

---

[2] The elements of a claim of common law trademark infringement under Missouri law are essentially identical to the requirements under Federal Law. *See, e.g., Steak 'n Shake Co. v. Burger King Corp.*, 323 F. Supp. 2d 983, 991 (E.D. Mo. 2004).

Trademarks in commerce on or in connection with the goods and services specified in the registrations. 15 U.S.C. § 1057(6).

        **2.**     *Consumers Are Likely To Be Confused As To The Source of The Infringing Products*

In analyzing likelihood of success on infringement claims, courts in the Eighth Circuit consider the six *SquirtCo* factors: (a) the strength of the trademark; (b) the degree of similarity between the two marks; (c) the competitive proximity of the products; (d) the alleged infringer's intent to confuse; (e) actual confusion; and (f) the degree of care reasonably expected of potential consumers. *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). "Under *SquirtCo*, no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." *Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1054 (8th Cir. 2005). As discussed below, an assessment of each *SquirtCo* factor here establishes a strong likelihood of confusion as to the source of the Infringing Products:

        **a.**     **Similarity between the owner's mark and the alleged infringer's mark**

The Defendants have taken care to copy and evoke in consumers the same commercial impression as that made by the THE NORTH FACE Trademarks. The design mark Defendants use on their Infringing Products, and which appears on the The South Butt Website (example at left below) is a near-mirror image of the Plaintiff's iconic Half Dome Design Mark (at right below):




Defendants' mark THE SOUTH BUTT and design (at left below): (a) incorporates the knock-off Half Dome Design Mark; (b) employs three words in the same locations adjacent to The Half Dome Design Mark; and (c) employs the same colors and layout that The North Face claimed as elements of its U.S. Trademark Reg. No. 3,538,773 of its Composite Trademark (shown at right below)—all for the purpose of copying and creating the same commercial impression as Plaintiff's famous Composite Mark:

 

A court "must look to the overall impression created by the marks" in order to assess similarity of the trademarks. *Bebe Stores*, 230 F. Supp. 2d 980, 992 (internal citation omitted). Further, "[w]here products are closely related, less similarity in trademarks is necessary to support a finding of infringement." *SquirtCo*, 628 F.2d at 1091. Here, taken as a whole or by individual elements, the Defendants' Infringing Trademarks incorporate and copy every aspect of, and the overall impressions created by, the famous THE NORTH FACE Trademarks. Moreover, Defendants and The North Face sell competing and nearly identical-looking products. Accordingly, this factor weighs overwhelmingly in favor of Plaintiff.

### b. Strength of the THE NORTH FACE Trademarks

There can be no dispute as to the strength of the THE NORTH FACE Trademarks. The evidence will demonstrate that The North Face, through its sister company and licensee, has spent hundreds of millions of dollars on advertising and promotion of the THE NORTH FACE Trademarks throughout the world and has generated billions in sales of products bearing those famous trademarks.

11

### c.      Degree to which the products compete with each other

Nor can Defendants dispute that they are selling directly-competitive apparel. Defendants have intentionally and directly copied The North Face products—seeking to copy every aspect of the products and the THE NORTH FACE Trademarks. Defendants are advertising, offering for sale, and selling the Infringing Products on the Internet, thus making them available throughout the United States and the world. Further, the evidence will show that Defendants' Infringing Products and THE NORTH FACE® products appeal to the same consumers. In short, Defendants and The North Face "are targeting the same customers with very similar goods, in many of the same locations. Closer competitive proximity could not be shown." *Bebe Stores*, 230 F. Supp. 2d 980, 993. This *SquirtCo* factor thus favors Plaintiff, too.

### d.      Defendants' intent to pass off goods as those of The North Face

An inference of intent arises where defendants, with knowledge of a competitor's marks, choose a similar mark from an infinite number of possibilities. *Empi, Inc. v. Iomed, Inc.*, 923 F. Supp. 1159, 1167 (D. Minn. 1996); *Aveda Corp. v. Evita Marketing, Inc.*, 706 F. Supp. 1419, 1429 (D. Minn. 1989). Here, there can be no legitimate dispute that the Defendants' selection of the Infringing Trademarks and sale of the Infringing Products are intentional. Indeed, the heart of their promotional efforts is the attempt to offer identical apparel bearing knock-off trademarks. Quite simply, the existence of the THE SOUTH BUTT Trademarks and apparel are based, and depend entirely, upon the pre-existing fame and reputation enjoyed by THE NORTH FACE® products and The THE NORTH FACE Trademarks.

### e.      Incidents of Actual Confusion

A plaintiff need not prove actual confusion in order to seek relief. It is enough that plaintiff prove a likelihood of confusion. 15 U.S.C. § 1114(1). The evidence will demonstrate a strong likelihood of confusion here. Defendants' Infringing Products are intended to be identical

12

to the THE NORTH FACE® products and bear source designations that infringe the THE NORTH FACE Trademarks.

####  f. Degree of Care By Consumers

Although likelihood-of-confusion analysis—including the "degree of care" factor—is often focused at the point of sale, it is well-established that "the Lanham Act protects **post-sale** as well as point-of-sale confusion." *Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 671 (8th Cir. 1996). As the Eighth Circuit explains, "an action for trademark infringement may be based on confusion of consumers other than direct purchasers, including observers of an allegedly infringing product in use by a direct purchaser." *Id. (citing Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F. 2d 985 (Fed. Cir. 1993) (emphasizing the "widespread recognition by so many other circuits of the importance of post-sale confusion" and citing several decisions that "recognized that an action for trademark infringement may be based on confusion of consumers other than direct purchasers, including observers of those wearing an accused article[,]" *id.* at 989)).

Nothing underscores the substantial likelihood of post-sale confusion here more than Defendants' blatant knock-off of The North Face's iconic Denali-style jacket and trademarks shown on page 2, *supra*. Except to a trained eye, the Defendants' Denali-style knockoff on a passerby at a mall or sporting event is likely to be confused with The North Face's original.

### C. Plaintiff Will Prevail on Its Dilution Claims

The Federal Dilution Act entitles the owner of a famous and distinctive trademark to an injunction against anyone who uses "a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. §1125 (c). Missouri's Anti-Dilution Statute similarly provides that "likelihood of injury to

business reputation or dilution of the distinctive quality of a mark … shall be a ground for injunctive relief." Mo. Rev. Stat. §417.061.

A dilution plaintiff has the burden of proving only that: (a) it has a valid mark, (b) its mark is famous and distinctive, and (c) defendants' use of the mark is likely to dilute plaintiff's mark. *See, e.g., Viacom Inc. v. Ingram Enterprises, Inc.*, 141 F.3d 886, 888 (8th Cir. 1998).[3] As discussed above, there can be no dispute as to the validity of Plaintiffs' marks or as to their fame and distinctiveness. As for the third element—likelihood of dilution—a plaintiff can meet that burden by showing that a defendant's use of a trademark will likely "blur" the plaintiff's mark or that such use will likely "tarnish" the mark. *See Anheuser-Busch, Inc. v. Balducci Publications*, 28 F.3d 769, 777 (8th Cir. 1994). Here, the evidence will establish all of these elements.

### 1. *The Likelihood of Dilution by Blurring*

In 15 U.S.C. § 1125(c)(2)(b), Congress provided the courts with a set of factors to consider in determining the likelihood of dilution by blurring:

(i)     The degree of similarity between the mark or trade name and the famous mark.
(ii)    The degree of inherent or acquired distinctiveness of the famous mark.
(iii)   The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
(iv)    The degree of recognition of the famous mark.
(v)     Whether the user of the mark or trade name intended to create an association with the famous mark.
(vi)    Any actual association between the mark or trade name and the famous mark.

---

[3] The Missouri statute does not require proof of fame. Otherwise, however, it is subject to the same analysis as the federal statute. *See Archdiocese of St. Louis v. Internet Entertainment Group, Inc.*, 99 CV 27 SNL, 1999 WL 66022, at *6 (E.D. Mo. Feb. 12, 1999)

14

Here, again, there can be no dispute that all six factors favor Plaintiff. Defendants intentionally copied the THE NORTH FACE Trademarks solely for the purpose of trading off of, and associating their products with, The North Face's famous marks, products, and goodwill. Moreover, as the Second Circuit recently pointed out in its reversal of the Southern District of New York's failure to find dilution of STARBUCKS by a competitor's use of MISTER CHARBUCKS, the first "blurring" factor renders unnecessary any finding that marks be <u>substantially</u> similar; instead, courts should treat "'degree of similarity' as <u>one</u> of several factors in determining blurring …, which must ultimately focus on whether an <u>association</u>, arising from the similarity between the subject marks, 'impairs the distinctiveness of the famous mark.'" *Starbucks Corporation.*, *supra*, at *9 (emphasis in original; citations omitted).

### 2.    *The Likelihood of Dilution by Tarnishment*

The Lanham Act defines "dilution by tarnishment" as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(b). Defendants can do nothing but concede that their intent is to trade off of the THE NORTH FACE Trademarks by denigrating The North Face Trademarks by employing the word BUTT in place of the term FACE "in an 'unwholesome or degrading context'." *Archdiocese of St. Louis*, *supra,* 1999 WL 66022, at *8. Indeed, use of the term "butt" has been held to constitute dilution by tarnishment. *See, e.g.*, *Anheuser-Busch, Inc. v. Andy's Sportswear, Inc.*, 40 U.S.P.Q.2d 1542 (N.D. Cal. 1996) ("buttwiser" t-shirts constitute dilution by tarnishment of BUDWEISER mark). As more fully discussed above, defendants' use of the Infringing Trademarks as a "designation of the source" for their competing commercial products disqualifies them from claiming "fair use" under Section 43(c)(3) of the Lanham Act, 15 U.S.C. § 1125(3). *See generally Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, *supra.*

**III.     THE BALANCE OF HARDSHIPS FAVORS PLAINTIFF**

The balance of hardships here is stark.  On one side are the goodwill and reputation of the THE NORTH FACE Trademarks, which have become distinctive and famous through more than forty years' use and hundreds of millions of dollars in sales, advertising, and promotion.  On the other side are the Defendants—knock-off merchants who stand to lose nothing more than profits from their infringing conduct should they be permitted to continue pending a trial on the merits.  Balancing Defendants' potential loss of profits against the irreparable harm to Plaintiff's goodwill and reputation hard-earned through years of promoting and selling exceptional quality THE NORTH FACE® products, and the long-term effects on Plaintiff's business of such infringement, establishes that the harm to Plaintiff overwhelmingly outweighs any alleged harm the Defendants may contend that they will incur.

**IV.     A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST**

Granting an injunction will benefit the public as it has an interest in precluding consumers from being confused and protecting the integrity of trademarks.  By enacting the Lanham Act, Congress long ago determined that it is in the public interest to hold persons liable for using deceptive and misleading trademarks as protection both for consumers and for trademark owners.  *E.g., Ziegenfelder Co. v. Dunkirk Ice Cream Co., Inc*., 30 U.S.P.Q. 2d 1604, 1612 (N.D.W.Va. 1993); *United States v. Torkington*, *supra,* 812 F.2d 1347, 1353 n.6 (11th Cir. 1987) ("enforcement of trademark laws benefits consumers even in cases where there is no possibility that consumers will be defrauded").

As District Judge Perry held in granting preliminary injunctive relief in *Bebe Stores, supra*, 230 F. Supp. 2d at 996, "[h]ere the public interest favors granting the injunction, because the public interest favors the protection of holders of valid trademarks against misuse by competitors."

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully urges the Court to grant its motion for entry of a preliminary injunction.

Dated:  December 30, 2009			Respectfully submitted,

/s/  Michael A. Kahn_____
David A. Roodman (5116)
Michael A. Kahn (3506)
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri  63102-2750
Telephone: 314-259-2614
Facsimile:  314-259-2020
Daroodman@bryancave.com
Michael.Kahn@bryancave.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record and upon Ronald N. Danna, registered agent for Defendant Williams Pharmacy, Inc., via U.S. mail, First Class postage prepaid, at 7701 Forsyth Boulevard, Suite 800, St. Louis, Missouri 63105 on this 30th day of December 2009.

/s/  Michael A. Kahn_____