IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE NORTH FACE APPAREL CORP., | ) | |
| | ) | |
| v. | ) | Case no. 4:09-cv-02029-RWS |
| | ) | |
| WILLIAMS PHARMACY, INC., | ) | |
| JAMES A. WINKELMANN, JR., | ) | |
| And THE SOUTH BUTT, LLC | ) | |

## DEFENDANTS' JAMES A. WINKELMANN JR. AND THE SOUTH BUTT, LLC'S JOINT PRE-HEARING MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

COME NOW James A. Winkelmann, Jr. ("Jimmy Winkelmann") and The South Butt, LLC, by and through counsel, and for their Joint Pre-Hearing Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction, state the following:

### INTRODUCTION

As McCarthy writes, "No one likes to be the butt of a joke, not even a trademark. But the requirement of trademark law is that a likely confusion of source, sponsorship or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of." 2 J. McCarthy, *Trademarks and Unfair Competition* §31:38 at 670 (2$^d$ ed. 1984) as cited in *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482 (10th Cir. 1987).

Jimmy Winkelmann is a 19 year-old freshman at the University of Missouri-Columbia. As a high school student at a college preparatory school in St. Louis County, Missouri, Jimmy began to notice his classmates' sartorial selections had become increasingly homogenous. A significant portion of his classmates had taken to wearing apparel and accessories produced by Plaintiff The North Face Apparel Corporation ("North Face"). Jimmy found this phenomenon to be rather curious given that his classmates were not of the exploring ilk, purportedly being the market targeted by North Face. He found the sudden collective movement by his peers to own

North Face products to be symptomatic of the modern consumer culture. Thus, as an antithesis to North Face, The South Butt was born.

## ARGUMENT

In deciding whether to enter a preliminary injunction, Courts should consider: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL Systems*, 640 F.2d 109, 112 (8th Cir. 1981) (en banc). "No single factor in itself is dispositive; rather, each factor must be considered to determine whether the balance of equities weighs toward granting the injunction." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998); *International Ass'n of Machinists and Aerospace Workers, AFL-CIA v. Schimmel*, 128 F.3d 689, 692 (8th Cir. 1997). Plaintiff North Face bears the burden of showing it is entitled to the relief sought. The burden of demonstrating that a preliminary injunction is warranted under the Lanham Act is heavy when granting the preliminary injunction will "give [the movant] substantially the relief it would obtain after a trial on the merits." *Sanborn Mfg. co., Inc.v. Campbell* Hausfeld, 997 F.2d 484, 486 (8th Cir. 1993). As more fully detailed below, the *Dataphase* factors heavily favor the denial of Plaintiff's requested preliminary injunction.

## I. PLAINTIFF IS SUFFERING NO IRREPARABLE INJURY

Plaintiff correctly notes that a court may grant a trademark plaintiff a presumption of irreparable injury if such a plaintiff is able to sufficiently demonstrate its likelihood of success on the merits. However, the governing words in that statement are "may" and "presumption". As The word "may" confers discretion upon the Court. Similarly, the term "presumption" permits that which is to be presumed to be rebutted.

Plaintiff would like the Court to believe that a presumption of irreparable harm should be accorded to it because of the intangible nature of the harm associated with the loss of goodwill that often arises in trademark disputes. However, Plaintiff is being disingenuous in this request and, as evidenced by the timing of its filing of the Complaint herein, is not interested in its goodwill. If Plaintiff was pursuing this lawsuit to preserve its goodwill, Plaintiff would not have sat" idle" in a litigious sense for months while Defendants, with the inadvertent assistance of North Face, continued to build The South Butt into a viable, thriving commercial entity, committing significant time, energy and resources to its development and growth, while Plaintiff observed and took note.

Plaintiff is suffering no irreparable injury. A review of the sequence of events involved herein supports this proposition. As alleged in Plaintiff's Complaint, Plaintiff became aware of The South Butt's product line in early August 2009 and issued a cease and desist letter to Defendants in short order thereafter. Defendants made it abundantly clear to Plaintiff that Plaintiff's allegations of infringement and dilution against Defendants were not well taken and that Defendants would continue to conduct themselves in accordance with the laws of The United States, the laws of the State of Missouri and the concept of capitalism.

Plaintiff did not file its Complaint against Defendants in August 2009.

Plaintiff did not file its Complaint against Defendants in September 2009.

Plaintiff did not file its Complaint against Defendants in October 2009.

Plaintiff did not file its Complaint against Defendants in November 2009.

Without commenting on the accuracy of the allegation contained in paragraph 43 of Plaintiff's Complaint, Plaintiff has pled that it believed The South Butt generated $100,000.00 in sales in November 2009. Naturally, those sales figures would not have been available until the end of November 2009. Upon forming the belief that there may be profits to be disgorged,

Plaintiff elected to initiate its action herein.  In fact, Exhibit K to Plaintiff's Complaint was

printed on December 3, 2009, just three (3) days after November sales could have been known.

The Complaint in this matter was finalized and filed by December 10, 2009.  Clearly Plaintiff's

own conduct in delaying the filing of its Complaint belies its claim of irreparable injury resulting

from a loss of goodwill.  This action is about disgorgement of profits, stifling of competition, and

elimination of consumer choice.  The timing is too coincidental.

     As of the date of the filing of its Complaint herein, Plaintiff was aware of the extensive

media interest in this dispute and the public response arising therefrom.  Plaintiff's filing of its

Complaint on December 10, 2009 proved to be the most opportune time to file in order to

generate the most pre-holiday media attention for Defendants during what is traditionally the

busiest shopping season of the year.  In effect, Plaintiff generated a market demand for The

South Butt products and now presents to the Court seeking to recover same.  Plaintiff filed its

Motion for Preliminary Injunction immediately after the holiday season.  This is not a case about

goodwill.  It is about money.

## II. THE BALANCE OF HARDSHIPS OVERWHELMINGLY FAVORS DEFENDANTS

     The parties in this case are a subsidiary of a self-described "$7,000,000,000.00 plus

powerhouse" and a college freshman.  Plaintiff states in its Motion that Jimmy stands to lose

"nothing more than profits".  Pursuit of the American Dream, freedom of speech, freedom of

choice for consumers, and marketplace competition are all at stake.

     The only hardship inuring to the detriment of Plaintiff herein is a direct and proximate

result of the Plaintiff's actions.  The dilatory pursuit of injunctive relief by the resource rich

Plaintiff herein evidences the absence of a requisite condition precedent to the injunctive relief

sought.  Plaintiff delayed for months its filing and thereafter waited an additional twenty (20)

days to file its Motion for Preliminary Injunction.  Plaintiff is effectively seeking to shut down

The South Butt in a heavy handed fashion so as to obviate the success and momentum garnered by The South Butt by virtue of the actions of North Face, actions over which North Face has at all times maintained control.  The balance of hardships factor overwhelmingly favors Defendants who stand to lose everything if the preliminary injunction is granted.

### III. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

Plaintiff herein cannot satisfy the third prong of the *Dataphase* analyses for the issuance of a preliminary injunction, as Plaintiff is not likely to succeed on the merits of its Complaint.  In all circumstances, "the burden of proving likelihood of confusion rests with the plaintiff." *KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121 (2004).  The movant must establish "a substantial likelihood of prevailing on the merits of [its] claim." *Phelps-Roper v. Nixon*, 509 f.3d 480 at 485 (8th Cir. 2007).

#### A.   Plaintiff  Will Not Prevail On Its Infringement Or Unfair Competition Claims

To prevail on its infringement and unfair competition claims under the Lanham Act and corresponding state and common law claims, Plaintiff must prove: (1)  It has rights senior to Defendants in the THE NORTH FACE trademarks, and (2) there is a likelihood of confusion between THE NORTH FACE trademarks and Defendants' trademarks as used in the marketplace. *Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997).

##### 1.   The THE NORTH FACE Trademarks

Absent limited focused discovery relating to the ownership of Plaintiff's alleged federal trademark registrations, Defendants are without information sufficient to form a belief as to the Plaintiff's claimed ownership of same.  However, Defendants have no reason to suspect Plaintiff has misrepresented its ownership of those trademarks.

##### 2.   Consumers Are Not Likely to be Confused as to the Source of

### Defendants' Products

Plaintiff correctly recites the factors the Court should consider in evaluating the merits of this matter. The Court shall evaluate: (a) the strength of the Plaintiff's trademark(s); (b) the degree of similarity between the two marks; (c) the competitive proximity of the products; (d) the Defendant's intent to confuse; (e) actual confusion; and (f) the degree of care reasonably expected of potential consumers. *SquirtCo. V. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980).

### a. Strength of Plaintiff's mark(s)

Defendants do not dispute that Plaintiff's mark(s) are strong. In *B.V.D. Licensing Corp. v. Body Action Design, Inc.*, 846 F.2d 727 (Fed. Cir. 1988), the court held confusion was unlikely between the famous mark B.V.D. for men's underwear and the mark B.A.D. for clothing, including undergarments. It reasoned that the better known a mark is, the more readily the public becomes aware of even a small deviation from it. This case supports the proposition that, when confronted with unique facts, the Court may find a mark to be so famous that the consuming public's awareness of it is so heightened it becomes conditioned to notice even small deviations.

Fortunately, the South Butt's marks are, as detailed below, more than slight deviations from Plaintiff's mark(s). It is Defendants' position that the ubiquitous nature of THE NORTH FACE has conditioned the consuming public to become intimately familiar with Plaintiff's mark and given it the ability to instantly recognize the Defendants' marks' variations from same.

The strength of Plaintiff's mark(s) also tip this factor in favor of Defendants due to the inherent nature of parody. Defendants direct the Court's attention to *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 f.3d 252, 262 (4th Cir. 2007) where the court held that where defendant parodied plaintiff's mark, the fame of plaintiff's mark actually diminished any

likelihood of confusion. *See also, Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.Supp.2d 410, 416 (S.D.N.Y. 2002). The *Louis Vuitton* court held, "while it is true that finding a mark to be strong and famous usually favors the plaintiff in a trademark infringement case, the opposite maybe true when a legitimate claim of parody is involved. [. . . ] In cases of parody, a strong mark's fame and popularity is precisely the mechanism by which likelihood of confusion is avoided." *Id.* at 261,

In the landmark trademark decision *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482 (10th Cir. 1987), the Tenth Circuit held, "In one sense, a parody is an attempt 'to derive benefit from the reputation; of the owner of the mark, if only because no parody could be made without the initial mark." *Id.*at 1486 (internal citation omitted). *Jordache* presented a situation in which a small company parodied the famous JORDACHE jeans by producing jeans for plus-sized women and which it labeled LARDASHE. The *Jordache* court recognized the parody and rejected Jordache's infringement and dilution claims.

It is beyond cavil that one cannot parody an item which is not familiar to the audience to which that parody is directed. Therefore, if parody is to be recognized as a legitimate factor mitigating against likelihood of confusion, which it is, the Court should find the great strength of Plaintiff's mark(s) favors Defendants herein, as they are parodists of same.

**b. Similarity between Plaintiff's mark(s) and Defendants' marks**

Defendants' marks are similar to Plaintiff's mark(s) only to the degree necessary to invoke Plaintiff in the minds of potential customers for the purpose of creating an effective and legally recognized parody. The marks are dissimilar enough to indicate Defendants' products were not produced, licensed, approved or otherwise associated with Plaintiff.

First, the only similarity in the text of the The South Butt logo to that of the Plaintiff is the word "The". Second, the font used by The South Butt is different from that employed by the

Plaintiff. Third, the text "The South Butt" is patently dissimilar in sight, sound and meaning of "The North Face."

When placed in context on Defendants' apparel, the comparison remains favorable to Defendants. For example, the situs of the logo employed by The South Butt on its jackets is the opposite of the situs of the logo employed by North Face on its jackets. The "half ass" design portion of The South Butt logo is comprised of two stripes curved in a butt-like fashion upward from the left side of the "The South Butt" text while the "half dome" design mark of the North Face is comprised of three thinner lines curved downward from the right side of the text "The North Face."

The recognition of this difference is critical to the success of Defendants' parody. Plaintiff has stated, and through millions and millions of dollars worth of marketing, has convinced the public that its "half dome" design is a stylized rendition of the north face of a mountain in Yosemite National Park and that the north face of that mountain is the most challenging to climb. Thus, The South Butt's "half ass" mark, which represents the human buttocks and is marketed to reflect the leisurely lifestyle embodied by The South Butt, is in direct opposition to the adventurous lifestyle espoused by The North Face. The South Butt's mark "Never Stop Relaxing" is, similarly, a parody of Plaintiff's adventurous motto "Never Stop Exploring". It should further be noted that the phrase "half ass", which Defendant uses to describe its mark, is also commonly used in ordinary parlance as a synonym for completing a task in a lazy fashion.

While the Defendants believe a "side-by-side" comparison renders Plaintiff's Complaint fatally flawed from a pleading standpoint (*See* Motion to Dismiss), the Plaintiff would have this Court enter a Preliminary Injunction on the strength of the "side-by-side" comparison found on pages two (2), ten (10) and eleven (11) of its Motion. Defendants urge the Court to adopt the

approach of the *Jordache* court when it wrote, "In evaluating similarity, "it is axiomatic in trademark law that 'side-by-side' comparison is not the test.  The marks "must be compared in the light of what occurs in the marketplace, not in the courtroom."  A prospective purchaser does not ordinarily carry a sample or specimen of the article he knows well enough to call by its trade name, he necessarily depends upon the mental picture of that which symbolizes origin and ownership of the thing desired.  Therefore, the court must determine whether the alleged infringing mark will be confusing to the pubic when singly presented." *Jordache,* supra at 1487-1488 (internal citations omitted).

### c. Defendants' Products are Competitively Distant From Those of Plaintiff

Plaintiff argues that Plaintiff's and Defendants' products are in close competitive proximity.  Erroneous.  Defendants admit they offer their products for sale on the Internet, which makes them available throughout the United States.  They are not available globally, as The South Butt does not ship internationally.  However, Defendants invite Plaintiff, the Court to visit the The South Butt website where a conspicuous, but parodic, disclaimer has been posted indicating that The South Butt is not, and does not desire to be, affiliated with Plaintiff.

The South Butt products are not sold on any website that also sells North Face products.  The South Butt products are not sold in any physical location at which North Face products are sold.  As Plaintiff has indicated, its "brick and mortar" sales are completed through an extensive network of its own retail locations and those of large third party retailers.

Finally, the evidence will demonstrate that The South Butt's products do not appeal to the same customers as North Face.  In fact, the evidence will show, that customers of The South Butt seek out South Butt products and purchase them while specifically aware that the products are not affiliated with North Face and even *because* the products are not affiliated with North Face, a social commentary by an increasingly "anti logo" marketplace.

**d. Defendants Do Not Intend to Pass Off Their Goods as Those of Plaintiff**

Plaintiff correctly notes that an inference of intent arises where defendants, with knowledge of a competitor's marks, choose a similar mark from an infinite number of possibilities.  However, Plaintiff utterly ignores the nuance to this rule that comes into play in a parody case such as this.

First, Defendants continue to dispute Plaintiff's allegation that The South Butt is a competitor of North Face's.  Defendant has taken a very clear and very public "anti (as in "antithesis") -North Face" position.  The South Butt is a brand for those who specifically do not want to wear products emblazoned with North Face marks.

Second, where parody is concerned, the aforementioned inference of intent to "pass off" is eliminated.  The *Jordache* court correctly noted, "where a party chooses a mark as a parody of an existing mark, the intent is not necessarily to confuse the public but rather to amuse".  *Jordache,* supra at 1486 (citing *Trademark Parody: A Fair use and First Amendment Analysis*, 72 Va. L. Rev. 1079, 1079-80 n.4 (1986)).  Defendants' intent is congruent with that of the maker of LARDASHE jeans, except that Defendants herein present with an even stronger case against finding intent to "pass off".  The South Butt's entire existence is premised on the notion that it is **not** The North Face and that it does not desire to be affiliated with The North Face.

The *Jordache* court specifically addressed the inference quoted by Plaintiff, when it held, "Our single concern here, however, is whether an intent to parody an existing trademark supports an inference of a likelihood of confusion under the reasoning that one who chooses a mark similar to an existing mark intends to confuse the public. We hold that it does not.  An intent to parody is not an intent to confuse the public." *Jordache*, supra at 1486 (internal citation omitted).

**e. Plaintiff Cannot Demonstrate Actual Confusion of the Parties' Marks**

Plaintiff makes no attempt to demonstrate actual confusion between Plaintiff's mark(s) and those of The South Butt.  Plaintiff correctly notes that it is not required to prove actual confusion in order to obtain relief and that it is only required to prove a likelihood of confusion. While true, it has long been recognized that actual confusion is the best evidence of a likelihood of confusion in the marketplace is actual confusion.  *See Jordache*, supra at 1487.  Plaintiff states in Paragraph 51 of its Complaint that "Defendants' use of the Infringing Trademarks is likely to cause and *is causing* confusion, mistake and deception among the general purchasing public as to the origin of Defendants' Infringing Products".  (emphasis added).  Plaintiff makes a similar claim in Paragraph 53 with respect to post-sale confusion.  Plaintiff's Motion is less bold. Plaintiff has made representations as to what it expects its evidence will show elsewhere in its Motion, but does not make any representation that it expects the evidence will show actual confusion.  This is because it is patently counterintuitive to believe that the consuming public is unable to discern the difference between a face and a butt.  In short, the Plaintiff appears to be asserting that while the consumers which comprise its customer base may be adventurous, they are devoid of the mental capacity to recognize parody.

**f.  Degree of Care by Customers**

Much as it did in connection with its discussion of "actual confusion", Plaintiff has ignored the proverbial elephant in the room.  There is simply no likelihood that a purchaser of The South Butt products will be confused or operate under the mistaken belief that they are buying North Face products.  This fact appears to be conceded when Plaintiff immediately redirects the discussion from point-of-sale confusion to post-sale confusion.

Plaintiff correctly notes that an action for trademark infringement may be based on confusion of consumers other than direct purchasers, including observers of an allegedly infringing product in use by a direct purchaser.  Plaintiff has not alleged in its Motion that its

evidence will show that there is any likelihood of post-sale confusion, only that such confusion is possible. Defendant strongly believes that there is no such likelihood based upon the significant differences between the marks delineated herein.

Furthermore, Plaintiff's concern with this issue is particularly bizarre. Logically, if a passerby believes she saw a North Face product on a third party and cannot distinguish between the North Face product and the South Butt product based upon a passing glance, that event presumably enhances the branding effect of Plaintiff in that its product appears more popular than it is or otherwise should be. This is all academic as Plaintiff has not directed the Court to any authority which requires Defendants to guard against the transient impression in the mind of a passerby caused by a post-sale fleeting glance as two individuals pass in a hallway. Such a standard would preclude nearly all parodies, and virtually all logo donning competing-brands across the broad spectrum of apparel items, including those previously deemed permissible by courts across the nation.

However, if the Court finds post-sale confusion relevant to the degree of care employed by those other than direct purchasers to be of any value, it must necessarily turn to the remaining *Dataphase* factors and consider that such confusion does not inure to the detriment of Plaintiff.

More important than the above and conceded by Plaintiff, the degree of care by consumers is, in a judicial sense, traditionally focused on the degree of care utilized by actual purchasers. The evidence will show that the purchasers of The South Butt products use the highest degree of care in making their purchase. Defendants are aware of numerous individuals who have traveled from distant locations to purchase its products at the Ladue Pharmacy. Defendants have received inquiries regarding the availability of international shipping. It is evident consumers are affirmatively and intentionally seeking out The South Butt.

**B. PLAINTIFF WILL NOT PREVAIL ON ITS DILUTION CLAIMS**

Plaintiff has correctly recited the law of dilution.  The Federal Dilution Act entitles the owner of a famous and distinctive mark to an injunction against anyone who uses "a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."  15 USC §1125(c).  Missouri's statute provides that "likelihood of injury to business reputation or dilution of the distinctive quality of a mark…shall be a ground for injunctive relief."  Mo.Rev.Stat. §417.061.

Plaintiff has the burden of proving: (a) it has a valid mark, (b) its mark is famous and distinctive, and (c) defendants' use of the mark is likely to dilute plaintiff's mark.  *Viacom Inc. v. Ingram Enterprises, Inc.*, 141 F.3d 886, 888 (8th Cir. 1998).  Defendants' quarrel with Plaintiff revolves around the third element.  A plaintiff can show a likelihood of dilution by showing a defendant's use of a trademark will likely "blur" the plaintiff's mark or that such use will likely "tarnish" the mark.  *Anheuser-Busch, Inc. v. Balducci Publications,* 28 F.3d 769, 777 (8th Cir. 1994).

## 1.     There is No Likelihood of Dilution by Blurring

To evaluate the likelihood of dilution by blurring, the Court should consider the following factors: (a) the degree of similarity between the mark or trade name and the famous mark; (b) the degree of inherent or acquired distinctiveness of the famous mark; (c) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (d) the degree of recognition of the famous mark; (e) whether the user of the mark or trade name intended to create an association with the famous mark; (f) any actual association between the mark or trade name and the famous mark.  15 USC §1125(c)(2)(b).

Plaintiff's review of the six factors outlined above is confined within four inches of printed text comprising less than one half of one page of its Motion.  That discussion is devoid of

any reference to factors (a), (b), (c) or (d).  Factors (e) and (f) favor Defendant.  The plain text of the statute appears to direct courts to consider the intent to create an "association" and any actual "association" to favor plaintiffs.  However, one must go beyond the plain language contained in the statute.  A strict interpretation of the statute would preclude the existence of any parody because a parody cannot be successful unless it references the subject of the parody and creates an association between the products in the mind of the audience.  We know from the *Louis Vuitton* and *Jordache* cases, among many others, that the dilution statute does not preclude a successful parody despite the "association" created.  Courts have elaborated slightly on how "association" is to be treated.  Plaintiff notes that a court should focus on whether the "association [ . . . ] impairs the distinctiveness of the famous mark".  *Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, 2009 WL 4349537 at 9 (2d. Cir. Dec. 3, 2009).

Plaintiff offers no analysis as to why the distinctiveness of its mark would be impaired in any fashion by the association created between Plaintiff's mark(s) and Defendants' marks.  Absent Plaintiff carrying this burden, factors (e) and (f) also favor Defendants.

Defendants further direct the Court to consider the federally registered trademarks referenced in Defendant Williams Pharmacy's Motion to Dismiss when it considers factor (c).

Moreover, Defendants incorporate their earlier discussion regarding the similarity of the parties' marks into this section for consideration by the Court of factor (a).  Defendants similarly incorporate their previous discussion of Plaintiff's marks' recognition into this section for consideration by the Court of factor (d).

Finally, by virtue of their lack of discussion of factor (b), Plaintiff has neglected to carry its burden with respect to that factor and, as such, the Court is urged to find that factor in favor of Defendants.

### 2.    There is No Likelihood of Dilution by Tarnishment

Plaintiff correctly notes that "dilution by tarnishment" is defined as an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 USC §1125(c)(2)(b). Plaintiff states, "Defendants can do nothing but concede that their intent is to trade off of the THE NORTH FACE Trademarks by denigrating The North Face Trademarks by employing the word BUTT in place of the term FACE 'in an unwholesome or degrading context'." Defendants respectfully disagree. Their intent is not to denigrate The North Face Trademarks. Defendants' intent is manifold.

Defendants' are simultaneously making an insightful social commentary regarding the consumer culture as well as, through parody, contrasting the adventurous rural lifestyle advocated by North Face with the relaxed urban/suburban lifestyle most frequently adopted by actual purchasers of Plaintiff's products. The South Butt has not cast aspersions upon Plaintiff, its products or its trademark(s), but rather, has objected to the tenor, tactics, and demands of North Face.

Plaintiff alleges that the use of the term "butt" has been held to constitute dilution by tarnishment. Conversely, references to the human posterior have been held not to be dilution by tarnishment. *See, e.g. Jordache*, supra. In *Jordache*, the allegedly diluting party used the term "Lardashe" for its plus-sized women's jeans in contrast to the then-fashionable brand "Jordache" owned by plaintiff therein. Naturally, "ashe" was a thinly-veiled reference to the human buttocks or "ass". There, the court held that while LARDASHE "might be considered to be in poor taste by some consumers...it is not likely to create in the mind of consumers a particularly unwholesome, unsavory, or degrading association with plaintiff's name and marks." *Jordache*, supra at 1490.

## IV. A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST

The entry of a preliminary injunction is not in the public interest in this case. Plaintiff correctly notes that it is in the public interest to grant a preliminary injunction against those who misuse the trademarks of another for the purpose of protecting consumers and trademark owners. However, as more fully explained above, Defendants are not using Plaintiff's marks, much less misusing Plaintiff's mark(s).

Second, Defendants' conduct is of the kind that invokes First Amendment principles and protections. As indicated above, The South Butt products operate as social commentary. The North Face has transformed from a niche brand for the adventurer to a ubiquitous uniform for the urban yuppie. As such, it is a poster child for the consumer culture. The South Butt recognizes The North Face's status as such and seeks to remind the consumer that they have a choice. Consumers can climb mountains or elect to refrain from doing so. Consumers can be one of the many wearing a North Face fleece or they can reject the logo mentality and wear an "anti-logo" product. This case is not about piracy or deception. It is about individuality and the freedom to express that individuality. In short, Defendants' marks and products are protected speech. The entry of a preliminary injunction would constitute a violation of Defendants' rights as guaranteed by the U.S. Constitution and its state analogs.

The preliminary inquiry in evaluating the level of protection afforded to Defendants by the First Amendment is to determine whether the speech is commercial speech or noncommercial speech. This determination is necessary to evaluate the proper level of protection the speech will be afforded. Here, Defendants' speech is noncommercial and is afforded maximum protection under the First Amendment—"strict scrutiny".

The U.S. Supreme Court recognized the distinction between commercial and non-commercial speech in *Bigelow v. Virginia*, 421 U.S.809 (1975) when it, for the first time, extended the protection of the First Amendment to commercial speech. In *Ohralik v. Ohio State*

*bar Assn.*, 436 U.S. 447 (1978), the Court again recognized this distinction when it explained

that its decisions have recognized 'the 'common-sense' distinction between speech proposing a

commercial transaction, which occurs in an area traditionally subject to government regulation,

and other varieties of speech." *Id.* at 455-456. The Court has since held that the Constitution

accords less protection to commercial speech than to other constitutionally safeguarded forms of

expression. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447

U.S. 557, 562-563 91980); *Virginia Pharmacy Board v. Virginia Citizens Consumer Council,*

*Inc.*, 425 U.S. 748, 771-772, n. 24 (1976).

 The Supreme Court provided some guidance in determining when something falls within

the gamut of commercial speech when it identified the "core notion of commercial speech" as

"speech which does 'no more than propose a commercial transaction.'" *Id.* at 762 (quoting

*Pittsburgh Press Co. v. Human Relations Comm'n*, 413 U.S. 376, 385 (1973). It would appear

from this definition that commercial speech is traditionally reserved for advertisements, which

Defendants' marks certainly are not. Similarly, the reference to a specific product does not by

itself render speech commercial. *See Associated Students for Univ. of Cal. At Riverside v.*

*Attorney General*, 368 F.Supp. 11, 24 (CD Cal. 1973). Finally, and most importantly, the fact

that Defendants have an economic motivation for their speech is clearly insufficient to turn their

materials into commercial speech. *See Bolger et al. v. Youngs Drug Products Corp.*, 463 U.S. 60

(1983) (citing *Bigelow v. Virginia,* 421 U.S. at 818; *Ginzburg v. United States*, 383 U.S. 463, 474

(1966); *Thornhill v. Alabama*, 310 U.S. 88 (1940)).

 It is clear after reviewing the authorities on the subject that despite Defendants'

motivation for utilizing the mark The South Butt being partially economic, their use of the mark

operates to do significantly more than propose a commercial transaction. Defendants' use of The

South Butt makes a rather astute social commentary on the nature of the consumer culture and those who participate therein.

Noncommercial speech is entitled to what has become popularly termed "strict scrutiny". Content-based regulations are presumptively invalid. *R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 382 (1992). To justify content-based regulation of speech, the government must show that the regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105 (1991).

Here, the proposed restriction on the use of Defendants' marks is clearly content-based in that Plaintiff is requesting the government to preclude Defendants from using their marks because they, in essence, do not approve of Defendants' sense of humor when directed toward Plaintiff and/or Plaintiff's customers. The protection of Plaintiff, Plaintiff's mark(s) and/or Plaintiff's customers from parody is not a compelling government interest worthy of stifling Defendants' First Amendment right to free speech, especially within the context of a patently non-confusing, easily differentiated, and starkly unique text and design of the The South Butt mark. Accordingly, the preliminary injunction should not issue.

WHEREFORE Defendants pray this Honorable Court deny Plaintiff's Motion for Preliminary Injunction and such other and further relief as the Court may deem necessary and just.

KODNER WATKINS MUCHNICK & WEIGLEY, LC

By: _____

ALBERT S. WATKINS, LC #10651
MICHAEL D. SCHWADE, #5214077
7800 Forsyth Boulevard, Suite 700
Clayton, Missouri 63105
(314) 727-9111
(314) 727-9110 Facsimile

albertswatkins@kwmwlaw.com
mschwade@kwmwlaw.com

## CERTIFICATE OF SERVICE

Signature above is also certification that on January 6, 2010 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court utilizing the CM/ECF system which will send notification of such filing to all parties of record.