IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE NORTH FACE APPAREL CORP., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 4:09-cv-02029-RWS ) |
| WILLIAMS PHARMACY, INC. JAMES A. WINKELMANN, JR., and THE SOUTH BUTT, LLC, | ) ) ) ) |
| Defendants. | ) |

## DEFENDANT WILLIAMS PHARMACY, INC. MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Defendant Williams Pharmacy, Inc. ("Pharmacy") files this Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, mailed to the registered agent for Defendant Pharmacy on December 30, 2009, and received by counsel on January 8, 2010.[1] Since Defendant South Butt, LLC ("SouthButt") has filed a memorandum in opposition which addresses many of the issues raised by Plaintiff it its brief, Defendant Pharmacy will not burden the Court with a repetition of issues properly raised, but will confine itself in this Memorandum to issues not raised by Defendant South Butt, or not fully addressed by that Defendant.

Plaintiff has indeed sat on its rights since at least August of 2009 without seeking injunctive relief until December 30, 2009. In its Memorandum filed with this Court, it explains its motivation for now filing for injunctive relief to have been spawned by Defendants South Butt and Winkelman, who through their counsel ". . . are shamelessly exploiting this lawsuit as a

marketing opportunity." Plaintiff's Memorandum in Support of Preliminary Injunction, page 2. Plaintiff relates its need for an injunction solely to this claimed public relations use of the lawsuit itself, a lawsuit Plaintiff filed perhaps without considering the negative public relations it was creating. What is the court's interest in this simple recitation of facts by Defendant SouthButt in its advertising? Even if shame-facedly exploited the advertising is simply free speech.

> ***Since these ramped-up activities*** are damaging the goodwill and distinctiveness of the THE NORTH FACE® brand and trademarks, ***Plaintiff has no option but to seek a preliminary injunction to halt the irreparable harm Defendants are willfully—indeed, gleefully—committing***.

Plaintiff's Memorandum in Support of Preliminary Injunction, page 3 (emphasis added). It is the *activities* of publicizing the lawsuit, not the product, about which Plaintiff claims damage to its goodwill and distinctiveness. To grant an injunction for the reason that Plaintiff is damaged by the publication of the fact that it sued Defendants simply is seeking a restraint on Defendants First Amendment rights, as well as the Missouri Constitutional right to free speech,[2] without any connection to trademark law or the claims raised in Plaintiff's Complaint.

Plaintiff's emphasis on the publicity of the lawsuit rather than the marketing of the product as the reason for its injunction begins to transform this case into one more closely resembling Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC, 638 F. Supp 2d 895 (N.D. Ill.2009), where the defendant used the phrase "Let Us Be" on a banner on his restaurant to protest against Lettuce Entertain You seeking to make a trademark infringement claim against defendant's use of "Lettuce mix" in the name of a restaurant. The banner to inform

---

[1]  Counsel has previously advised Counsel for Plaintiff that Defendant Pharmacy had not been served until January 5, 2010, when the Motion was received by the registered agent for Defendant Pharmacy, and that Counsel for Defendant would file a response by January 13, 2010.
[2]  All references to the Untied States Constitutional right to free speech are meant to also apply to the concomitant right in the Missouri Constitution of 1945, Article I, Section 8.

the public about the lawsuit was not the same as the name on the restaurant, and not capable of restraint by injunction.

Plaintiff's claim as a result begins to resemble a request for a gag order more than an injunction from unfair competition or trademark infringement. Yet no one is threatened by a lack of fair trial by Defendant South Butt's comments, and there are no legitimate claims of privacy of any party to be protected. Without these, entering an injunction simply because of Defendant South Butt's impertinent comments about the filing of the lawsuit cannot be justified under the First Amendment. It particularly cannot be justified if issued against Defendant Pharmacy, who has made no public statement except to the press in response to inquiries concerning the specific legal theories it has raised in court pleadings. It has made no public statements about the lawsuit in an attempt to increase its sales.

For this reason, the motion should be denied at the outset.

Secondly, Plaintiff states in a footnote 1, on page 3, that it intends to submit affidavits and exhibits in support of its Motion after discovery. Plaintiff is not seeking a temporary restraining order, and a preliminary injunction may only be granted after notice and hearing, Federal Rule of Civil Procedure 65, at a hearing, affidavits and exhibits not properly introduced by a witness are simply hearsay, and will not support entry of an injunction.

Addressing the substance of its memorandum, Plaintiff spends some effort trying to show post-sale confusion. (Plaintiff's Memo, page 13) To do so, Plaintiff must make a claim concerning its Denali jacket and the trade dress claim of similarity to the South Butt jacket. However, Plaintiff has failed to plead the trade dress issue properly, and cannot proceed at this stage with any claim concerning trade dress. Defendant Pharmacy believes its motion to dismiss or strike the trade dress elements of Plaintiff's Complaint is well taken.

While both Plaintiff and Co-Defendants have been diligent in finding cases of interest to cite to the Court, they have both ignored certain cases which have specific application to this case.

Both Plaintiff and Co-Defendants have cited and discussed Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482 (10th Cir. 1987). However, neither have addressed the importance of the case to this case. Jordache may be the first case, if not the only, which clearly discusses the implications of the state anti-dilution statutes like the one at issue here. While Anheuser Busch, Inc. v. Balducci Publications, 28 F.3d 769 (8th Cir. 1994) may discuss the statute, it does so without explication, and does not significantly delve into the import of the statute. Jordache, in contrast, goes into a detailed discussion of the New Mexico statute, which is very close in language to the Missouri statute.

> Appellant contends that tarnishment can also occur in another manner that was not discussed by the district court. . . . According to appellant, these cases require a finding of tarnishment here because of the alleged disparity in quality between Lardashe jeans and Jordache jeans.
>
> This argument presumes that the public will associate the manufacturer of Lardashe jeans with the manufacturer of Jordache jeans, thereby causing damage to the high quality image of Jordache. Because we find that the Lardashe mark was an intentional parody of the Jordache mark, we assume that the public will to some extent associate the two marks. To be actionable, however, the association of the two marks must tarnish or appropriate the good will and reputation of the owner of the mark. If the public associates the two marks for parody purposes only and does not associate the two sources of the products, appellant suffers no actionable injury. Indeed, a manufacturer of a high quality product will typically benefit if its competitors are marketing a poor quality product at similar prices- *unless* the public associates the manufacturer of the poor quality product with the manufacturer of the high quality product. *See id.* at 5-31 ("A trademark owner should not be made to tolerate an unknown quality level for products, whether similar or not, *if they would likely be associated with his business.*") (emphasis added). Thus, the actionable association of marks is limited to an association of the source of the marks. Association of marks for parody purposes without corresponding association of manufacturers does not tarnish or appropriate the good will of the manufacturer of the high quality similar product.

The New Mexico statute plainly states that an actionable dilution of a trademark can occur despite the absence of competition between the parties and despite the absence of confusion as to the source of the products. But the statute also provides that relief is available only if there is some likelihood of injury to business reputation or of dilution of the distinctive quality of the trademark. There can be no likelihood of either injury if the public does not associate a product bearing one trademark with the manufacturer of a product bearing a different trademark.

Jordache Enterprises, Inc. v. Hogg Wyld, Ltd., 828 F.2d 1482, 1490 -1491 (10th Cir.1987).

Plaintiff's Complaint, and now its Motion, tend to plead the opposite of injury. It becomes increasingly clear at every turn that neither the public nor the Plaintiff considers that these products compete, and neither associates the products except by the fact of the lawsuit. The conclusion under these state statutes must be the same:

> Our review of the record convinces us that the public will not associate Lardashe jeans with the appellant or, if they do, they will only make the association because of the parody and not because they believe Jordache Enterprises, Inc. manufactures Lardashe jeans. Therefore, there is no likelihood of an injury to appellant, and its dilution claim must fail.

Jordache at 1491.

Neither Plaintiff nor Co-Defendants addresses Nike, Inc. v. Just Did It Enterprises, 6 F.3d 1225 (7th Cir. 1993). In that case, defendant produced "Mike" products which were meant to parody the famous Nike products. Parody is at the heart of the analysis of the case.

> [T]he keystone of parody is imitation. It is hard to imagine, for example, a successful parody of Time magazine that did not reproduce Time's trademarked red border. A parody must convey two simultaneous-and contradictory-messages: that it is the original, but also that it is not the original and is instead a parody. To the extent that it does only the former but not the latter, it is not only a poor parody but also vulnerable under trademark law, since the customer will be confused.
> *Cliffs Notes,* 886 F.2d at 494. Thus the parody has to be a takeoff, not a ripoff.
>
> In the end, we must simply ask whether a retail customer buying a shirt from JUST DID IT Enterprises with the name MIKE on a swoosh design would likely believe that it is "in some way related to, or connected or affiliated with, or sponsored by," the plaintiff NIKE. *See Beefeater,* 540 F.2d at 274. Thus, customer "confusion" need not be restricted

to a mistake regarding the source of the goods; the court should also consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product.

Nike, Inc. v. Just Did It Enterprises, 6 F.3d 1225, 1228 -1229 (7th Cir. 1993).

This analysis could not be more appropriate here. One could not parody NorthFace without reproducing in some manner its colors, its curved line logo ("swish design") its reference to direction and body parts. Yet it is nonetheless parody, and when asking the ultimate question, could a retail consumer looking for outdoor gear really believe that something called "SouthButt" was connected with the NorthFace? The question almost answers itself, and the only answer is "NO."

Plaintiff has gone to great lengths to extol the attributes of its customers. They are not likely to want to joke about their outdoor hobbies or compulsions. They are not likely to want to associate their exercise with laziness and the rear end of the body. Co-Defendants product is only found on a website with disclaimers of its association with Plaitniff, or at a pharmacy where on would not expect to find mountaineering gear. To show damage to such a specific public as Plaintiff's consumers, post – consumer confusion is not really at play. As stated in Nike: "We are dealing here with customer confusion when choosing to purchase, or not purchase, the items, not public confusion at viewing them from afar. *Beefeater,* 540 F.2d at 266 (the "consuming public"); *Cliffs Notes,* 886 F.2d at 495 ("likelihood that an ordinary prudent purchaser" would be confused). Nike, at 1229.

Finally, the parties do not cite New York Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d 550 (2nd Cir. 2002). This case involved the Las Vegas casino and the New York trading center, and addressed the issue of infringement and blurring, both in the trademark context and the anti-dilution state statute context.

The case gives a rather explicit description of what the Plaintiff's burden truly is in this case:

> To support a finding of infringement, a plaintiff must show a probability, not just a possibility, of confusion. *See Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998). Confusion exists where there is a "likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978). There can also be confusion where consumers are likely to believe that the challenged use of a trademark is somehow sponsored, endorsed, or authorized by its owner. *See Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 204-05 (2d Cir.1979).

New York Stock Exchange, Inc. at 554-555. Plaintiff seems to have ignored this burden here. It must show the probability of success on the merits because it must show the probability of confusion. In the trademark context, the two cannot be separated, and the common test for injunctive relief must be altered to fit the law of infringement. Here, neither definitions of confusion will be shown to exist, though Defendant Pharmacy admits that the question is fact intensive.

Secondly, the case discusses the relationship between infringement and blurring:

> Blurring occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co.,* 41 F.3d at 43 (emphasis omitted). To determine the likelihood of blurring, we have looked to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark. *See Sports Auth., Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 966 (2d Cir.1996); *Deere & Co.,* 41 F.3d at 43 n. 8. Although we realize that infringement and blurring differ in important respects, we believe that on the facts presented here, our discussion of infringement also disposes of the blurring claim. The humor or parody in the Casino's use of the modified NYSE marks depends upon the fact that the Casino is not claiming to be associated with NYSE, albeit the Casino seeks to emphasize that it too offers possible profits and certain risks. There is therefore no diminution of the capacity of NYSE's marks to serve as a unique identifier of its products and services. Consequently, the grant of summary judgment was proper.

Id., at 558.  Here, there is no possibility, for the reasons stated above, that the outdoor enthusiast is being presented with the SouthButt product as similar to the NorthFace product.  The parody is blatant.  The sophistication of the consumer and the lack of predatory intent are dispositive.  The consumer is highly sophisticated, as pled by Plaintiff, and the intent is to make fun of those who wear the NorthFace to look "cool" or "athletic" without truly being so.  Not being able to overcome these elements of blurring, Plaintiff's claim must fail.

Defendant Pharmacy does not believe this brief is exhaustive of the discussion of the issues presented to the Court, but in conjunction with the issues raised by the other Defendants, it does become exhaustive.  For all of these reasons, Defendant Pharmacy believes that the Plaintiff's Motion for Preliminary Injunction should fail and be denied.

> Respectfully submitted,
>
> PAULE, CAMAZINE & BLUMENTHAL, P.C.
>
>
> */s/ Thomas M. Blumenthal*
> Thomas M. Blumenthal, EDMo 2652
> Jeffery L. Michelman, EDMo 3851
> 165 North Meramec Ave, Ste 110
> St. Louis, MO 63105-3772
> Telephone: 314-244-3635
>                 314-244-3669
> Facsimile: 314-727-2101
> Email: tblumenthal@pcblawfirm.com
>             jmichelman@pcblawfirm.com
>
> Attorneys for Defendant Williams Pharmacy, Inc.

<u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby states that on this 13th day of January, 2010, the foregoing was electronically filed with the Clerk of Court via the Court's electronic filing system to:

>David A. Roodman
>Bryan Cave LLP
>One Metropolitan Square
>211 North Broadway, Suite 3600
>St. Louis, MO  63102-2750
>
>Michael A. Kahn
>Bryan Cave LLP
>One Metropolitan Square
>211 North Broadway, Suite 3600
>St. Louis, MO  63102-2750
>
>G. Roxanne Elings
>Greenberg Traurig LLP
>MetLife Building
>200 Park Avenue, 34th Floor
>New York, NY  10166
>
>Heidi Garfield
>Greenberg Traurig LLP
>MetLife Building
>200 Park Avenue, 34th Floor
>New York, NY  10166
>
>Albert S. Watkins
>Kodner and Watkins
>7800 Forsyth Boulevard
>Clayton, MO 63105
>
>Michael Schwade
>Kodner and Watkins
>7800 Forsyth Boulevard
>Clayton, MO 63105

       */s/ Thomas M. Blumenthal*