IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE NORTH FACE APPAREL CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 09-CV-02029 |
| WILLIAMS PHARMACY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF THE NORTH FACE'S REPLY IN SUPPORT
OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff The North Face submits this consolidated reply to the separate oppositions filed by The South Butt Defendants (Doc. 34) and Williams Pharmacy (41) (collectively, "Defendants").

**INTRODUCTION**

Despite Defendants' efforts to distract the Court with side issues—such as Williams Pharmacy's contention that the injunction sought by The North Face is really a gag order (Doc. 41 at 2-3), and The South Butt Defendants' curious attempt to get the Court to engraft the First Amendment "strict scrutiny" test for content-based government regulations onto the Eighth Circuit's preliminary injunction standards—their opposition papers do have the virtue of narrowing the focus of the actual matters in controversy. By donning parody garb, they concede—as any purported parodist must—the fame, strength and distinctiveness of THE NORTH FACE trademarks.

The problem for Defendants, however, is that by pushing all their chips onto the parody square they have exposed the fundamental flaw in their defense. Defendant Winkelmann may claim to resemble Alfred E. Neuman, but he and his fellow Defendants are hardly publishing

Mad Magazine, and their knock-off apparel is a far cry from the parody stickers of The Topps Company's Wacky Packages.  (*See* http://www.wackypackages.com)  Moreover, their attempt to pass themselves off as fleece-clad soul mates of Weird Al Yankovic reveals the hollowness of their position.  Indeed, it forces them to try to tiptoe around the enormous elephant in the middle of the room—namely, the Eighth Circuit's controlling decision in *Anheuser Busch, Inc. v. Balducci Publications*, 28 F.3d 769 (8th Cir. 1994).  Finally, unable to cite case law in support of their position, Defendants resort to the last refuge of the desperate infringer—laches—even though the purported "delay" here would not bar relief in this Circuit.

In short, Defendants' opposition papers do not change the essential facts and law which support the propriety and need for the preliminary injunction that The North Face seeks.  Accordingly, we submit this reply.

## ARGUMENT

### 1.   Eighth Circuit Decisions Control Here.

The most glaring defect in Defendants' quick tour of the respective *SquirtCo* and dilution factors is the virtual absence of any reference to Eighth Circuit governing precedents.  Further, Defendants entirely ignore relevant decisions by Judge Perry in *Bebe Stores, Inc. v. May Dept. Stores Intern., Inc.*, 230 F. Supp. 2d 980, 995 (E.D. Mo. 2002), *aff'd*, 313 F.3d 1056 (8th Cir. 2002), and Judge Mummert in the parody case of *Anheuser-Busch, Inc. v. VIP Products, LLC,* No. 08 CV 0358, 2008 WL 4619702 (E.D. Mo. Oct. 16, 2008).

The Eighth Circuit is no stranger to trademark infringers' assertions of parody.  Indeed, in *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987) and *Balducci Publications*, 28 F.3d at 776, this Circuit confronted two of the toughest parody fact patterns of the last quarter-century—each of which presented a far more compelling "parody" claim than these Defendants

2

do. Both cases involved: (a) mediums (protest T-shirts, fake print ads) that, unlike here, were completely different than the trademark owner's core products (namely, insurance policies and beer); (b) expression closely associated with the First Amendment (anti-war T-shirts in *Novak*, a humor magazine back-cover ad in *Balducci*); and (c) obvious parodies of famous brands (MUTUAL OF OMAHA and MICHELOB DRY). Nevertheless, in both cases the Eighth Circuit held that the asserted parodies did not save the defendants from a finding of infringement and dilution.

These two controlling Eighth Circuit decisions pose insurmountable hurdles for the Defendants, especially since the Defendants': (a) infringing products here are almost exactly the same in appearance as the apparel products bearing the famous trademarks of The North Face; and (b) infringing conduct is plainly not protected by the First Amendment.

Rather than confront and attempt to distinguish *Novak* and *Balducci*, Defendants ignore the former and try to tiptoe around the latter. The South Butt Defendants quietly cite *Balducci* only once for an innocuous point of dilution law (Doc. 34 at 13). Williams Pharmacy ignores *Balducci's* holding and discussion of the law, choosing instead to mention the case only as a preface to a lengthy three-paragraph quotation from *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482 (10th Cir. 1987) (which decision long predates the Federal Dilution Act of 1995), and contending that *Balducci* "does not significantly delve into the purport" of the Missouri dilution statute, at least as compared to the *Jordache* court's discussion of New Mexico's statute, which was the source of that defendant's parody defense.

Defendants' embrace of the *Jordache* case is understandable, since *Jordache* is one of the only trademark infringement cases to find in favor of a parodist selling a similar category of

products as the trademark owner.[1]  But that embrace is a serious mistake: not only is *Jordache* not controlling as law but its facts underscore the culpability of the Defendants here.  In *Jordache*, a famous fashion apparel manufacturer sued a small company that identified its blue jeans for overweight women with a smiling pig and the word "Lardashe" prominently embroidered on the rear pants pocket.  Key to the court's decision to affirm the trial court's finding of no infringement were the significant differences in the designs of plaintiff JORDACHE's trademark and defendant's accused designs (828 F.2d at 1485):

> Our review of the evidence shows that the marks, and their suggested images, are obviously different.  Many of the Jordache jeans are identified by a small brown patch with the word "Jordache" written in white in block letters with a gold horse's head superimposed over the lettering.  In other instances, the patch is white with blue block lettering and no horse. * * * In contrast, the Lardashe jeans have a large, brightly colored pig head and two hooves, giving the appearance that a pig is peering over the back pocket.  The word "Lardashe" is written in script beneath the pig's head, below which is an upside down embroidered heart. *See* appendix.

Although the images in the appendix to that opinion are in black-and-white—and thus do not fully capture, in the Court's words, the "striking, brightly colored and far from subtle" pig design (*id*)—the differences remain conspicuous:

---

[1] Generally, courts find that a claim of parody fails where the would-be parodist is selling the same category of products as the trademark owner.  *See, e.g., Starbucks Corporation v. Wolfe's Borough Coffee, Inc.*, No. 08-3331-cv, 2009 WL 4349537, at *9 (2d Cir. Dec. 3, 2009) (coffee beans); *Dr. Seuss Enterprises v. Penguin Books et al.*, 109 F.3d 1394 (9th Cir. 1997) (books).



The significance of the *Jordache* differences is underscored when compared to the infringement here:

| THE NORTH FACE® and Design Mark (U.S. Reg. No. 3,538,773) | THE SOUTH BUTT and Design Application (U.S. App. Serial No. 77/617,979) |
|---|---|
| | |

While Defendants pretend that the only similarity between the marks is the word "THE," the significant (and confusing) shared elements include:

- The red background;
- The square shape;
- The red-and-white color scheme;
- The vertical three-word stack, including:
    - First line: "THE"
    - Second line: A five-letter directional word
    - Third line: A four-letter word
- All text in white upper-case, sans serif font;

5

- Justified text margin adjacent to designs;
- Curved, multi-arch graphic design.

Moreover, the Defendants' intentional replication of THE NORTH FACE marks here becomes more striking when viewed in the context of Defendants' intentional copying of Plaintiff's distinctive apparel designs, which Defendant Winkelmann himself has characterized as "iconic."[2]



| THE NORTH FACE® Jacket | THE SOUTH BUTT Jacket |
|---|---|

In short, *Jordache* is: (a) inconsistent with Eighth Circuit and Eastern District precedents; and (b) contrary to case law denying the parody defense to defendants whose goods compete with those of the trademark owners. Moreover, it concerned an interpretation and application of

---

[2] Another parody case Defendants rely upon, *New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550 (2d Cir. 2002), is not on point and easily distinguished. Unlike here, in *New York Stock Exchange*, the accused "casino" services were completely different than the plaintiff's well-known "Stock Exchange." The defendant Las Vegas hotel was not operating a stock exchange under the accused mark; it was using NEW YORK $LOT EXCHANGE in its hotel casino, while the plaintiff was using NEW YORK STOCK EXCHANGE in connection with its famous stock market services. The court relied upon the facts that the: (i) respective services are distinctly different; (ii) "marks that are so obviously modified that any viewer would understand that the Casino was engaged in a parody or humorous play on words"; and (iii) marks playfully used in a context to "underline the obvious" parody (e.g., advertisements including "a Las Vegas showgirl dressed as the Statue of Liberty"). *Id*. at 555. As the court explained, "[t]here is no evidence that NYSE and the Casino compete directly in any market or that NYSE plans to "bridge the gap" by entering the casino business." *Id.* Here, in stark contrast, Defendants are marketing identical apparel in direct competition with The North Face.

the *New Mexico* state dilution statute and was decided 23 years ago—almost a decade <u>before</u> the 1996 effective date of the Federal Trademark Dilution Act. The New Mexico statute allowed the parody defense in circumstances that the applicable federal law specifically disallows: the Trademark Dilution Act expressly eliminates the parody defense if the infringing trademarks are used "as a designation of source for the competing products themselves." 15 U.S.C. § 1125(c)(3). There is no dispute here: that is precisely how the Defendants are using their knock-off marks and designs, namely, as designations of source. Indeed, as discussed in our opening brief, The South Butt Defendants even sought, and continue to seek, to register variations of THE SOUTH BUTT for the products identical in appearance to those that The North Face sells under its THE NORTH FACE trademarks. Defendants are thus barred from relying upon parody as a dilution defense.

      **2.**    **The Facts Refute Defendants' Delay Argument And Cannot Excuse Their Infliction of Irreparable Harm.**

Ignoring this Circuit's controlling law, which holds "[w]here likelihood of success on the merits has been shown in a trademark infringement action, the threat of irreparable harm may be presumed," *Bebe Stores, Inc. v. May Dept. Stores Intern., Inc*., 230 F. Supp. 2d 980, 995 (E.D. Mo. 2002) *aff'd*, 313 F.3d 1056 (8th Cir. 2002), Defendants try to dodge liability for their misconduct by contending that The North Face should have sued them last August. (Doc. 41 at 1: "Plaintiff has indeed sat on its rights since at least August of 2009"; Doc 34 at 3: "Plaintiff did not file its Complaint against Defendants in August 2009.")

The facts and law belie Defendants' revisionist history. Plaintiff's first contact with any of the Defendants was via its letter of August 14, 2009 requesting that they cease their infringement and dilution. (Cmplt. Exh. E.) That letter was sent just ten days after The North Face first learned of the existence of that mark, and of the The South Butt Defendants as a result

7

of the U.S. Trademark Office's August 4, 2009 publication of the latters' application to register their mark. (Cmplt. ¶¶ 33-34.) The South Butt Defendants themselves "delayed" almost a month, not responding to the cease-and-desist until September, when they refused The North Face's request but offered to sell Plaintiff their business, including their alleged trademarks, for one-million dollars. (*Id.* ¶ 35, Ex. 5.) Defendants ultimately withdrew that trademark application but subsequently filed another one to register THE SOUTH BUTT. Defendants announced to the press in October that they were withdrawing their one-million dollar settlement offer and then began ramping up their marketing activities over the next eight weeks. (*Id.* ¶¶ 36-39, 42-44, Ex. I.)

Thus, sometime in October 2009 was the earliest time that The North Face could have concluded that The South Butt Defendants were unlikely to cease their infringing conduct. Like any plaintiff acting in good faith, The North Face needed to investigate the facts and circumstances surrounding Defendants' actions before retaining litigation counsel and preparing a complaint. Such an investigation takes time, and The North Face filed this lawsuit on December 10, 2009—only eight weeks after Defendants withdrew their settlement offer (and shortly after Defendants publicly proclaimed November sales of $100,000 and their intent to expand their business nationwide by Spring 2010).

Defendants' "delay" argument is contrary to the facts and cannot avoid a finding of irreparable harm to Plaintiff. Defendants' conduct and dramatic increase in infringing activities throughout the fall of 2009—and especially after the filing of the lawsuit (*e.g.*, announcing on their website "We're being sued! . . . please get your Christmas orders in ASAP !")—changed the trademark landscape, requiring the filing of the motion for preliminary injunction to halt the irreparable harm resulting from Defendants' refusal to stop infringing.

In the Eighth Circuit, a "delay" of eight weeks does not show a lack of irreparable injury or otherwise undercut a plaintiff's right to injunctive relief where, as here, the time was used towards investigation and preparation of a lawsuit. The question is "whether the length of delay was unreasonable." *Safety-Kleen Systems, Inc. v. Hennkens*, 301 F.3d 931, 936 (8th Cir. 2002). In *Safety-Kleen*, the Eighth Circuit affirmed the trial court's grant of a preliminary injunction, holding that a seven-month delay in bringing suit did not preclude a finding of irreparable injury. *Id.*; *accord United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741-42 (8th Cir. 2002) (affirming grant of preliminary injunction and holding that irreparable injury had not "evaporated" during six-month delay); *cf. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) (affirming denial of preliminary injunction in part because plaintiff's *nine-year* delay in asserting unfair competition claims "belies any claim of irreparable injury pending trial."). Indeed, the passage of eight-weeks is not *per se* unreasonable in this Circuit even in the more stringent context of a temporary restraining order. *Karen J. Connelly, S.Y.K., LLC v. ValueVision Media, Inc.*, No. 04-4559, 2004 WL 2569494, *7 (D.Minn. Nov. 9, 2004) (granting a temporary restraining order after finding that "a delay of three months" did not counter the presumption of irreparable harm); *Nokota Horse Conservancy, Inc. v. Bernhardt*, No. 1:09-CV-024, 2009 WL 3381545, *6 (D.N.D. October 20, 2009) (granting a temporary restraining order and finding presumption of irreparable harm not rebutted even though mark had been registered since 2004, Plaintiff demanded in August 2008 and January 2009 that the mark be assigned to it, and Plaintiff did not ultimately file suit until May 2009).

Finally, and contrary to the "gag order" contention of Williams Pharmacy (Doc. 41 at 2), The North Face is not seeking to enjoin Defendants and their attorneys from exploiting this

9

lawsuit in the media, but only to enjoin Defendants' ongoing infringement and dilution of Plaintiff's famous trademarks.[3]

### 3. Defendants' Purported "Harms" Are Self-Inflicted And Do Not Tip the Balance of Harms.

With apparent straight faces, Defendants posit as their possible harms from a preliminary injunction the loss of "the American Dream, freedom of speech, freedom of consumer choice, and market competition." (Doc. 34 at 4.) Even were we to assume that any of the conjured "harms" constitutes a concrete, provable injury, Defendants' contention fails because "any harm to [Defendants] from granting the injunction is harm of [Defendants'] own making." *Bebe Stores*, *supra*, 230 F. Supp. 2d at 996. To quote Judge Perry in *Bebe Stores*, these Defendants "could have stopped when [they] learned of the problem," could have "picked a new name" when they learned of the problem, could have "stopped when the lawsuit was filed," or could have "at least pulled some of [their] advertising"— but Defendants "chose not to do any of these things." *Id*. Instead, Defendants intentionally copied the THE NORTH FACE trademarks and, since the filing of this lawsuit, have blatantly increased their exploitation and marketing in an effort to undermine The North Face's goodwill in the marketplace and maximize the profits from sales of their knock-off goods. An injunction will cause no identifiable injury to Defendants that is not a direct result of their own willful misconduct.

### 4. Eighth Circuit Law Establishes The Public Interest In Injunctive Relief.

In our opening brief, we cited this Circuit's precedent that granting a preliminary injunction in a trademark case by definition benefits the public. As Judge Perry held in *Bebe Stores, supra*, "[h]ere the public interest favors granting the injunction, because the public

---

[3] Any impropriety in Defendants' ongoing media campaign is best addressed by the trial publicity provisions of Rule 3.6 of the Missouri Rules of Professional Responsibility.

interest favors the protection of holders of valid trademarks against misuse by competitors." 230 F. Supp. 2d at 996.  This case is no different.

In the face of such precedent, the Defendants struggle mightily to argue that this Court should break new Constitutional ground and apply the "strict scrutiny" test hitherto reserved solely for constitutional challenges to content-based government regulations.  (Doc. 34 at 17-18.)  Not surprisingly, the Eighth Circuit has already considered and forcefully rejected this First Amendment argument in *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 402-03 (8th Cir. 1987) (some citations omitted) (emphasis added):

> Novak argues that his use of the design in question is an exercise of his right of free speech and is protected by the First Amendment.  We believe, however, that the protection afforded by the First Amendment does not give Novak license to infringe the rights of Mutual.  <u>Mutual's trademarks are a form of property, and Mutual's rights therein need not "yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist."</u>  *Lloyd Corp v. Tanner,* 407 U.S. 551, 567 (1972); *accord Dallas Cowboys Cheerleaders, Inc.,* 604 F.2d at 206; *see also Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 758-59 (9th Cir. 1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *Reddy Communications, Inc.,* 199 U.S.P.Q. (BNA) at 634.  Given the circumstances of this case, Mutual's property rights should not yield.  <u>The injunction our decision upholds prohibits Novak's conduct only insofar as Novak uses Mutual's marks as logos or "to market, advertise, or identify [his] services or products."</u>  Other avenues for Novak to express his views exist and are unrestricted by the injunction; for example, it in no way infringes upon the constitutional protection the First Amendment would provide were Novak to present an editorial parody in a book, magazine, or film.  Because the injunction leaves open many such avenues of expression, it deprives neither Novak nor the public of the benefits of his ideas.  We therefore conclude that in the circumstances of this case failure to protect Mutual's trademark rights would amount to an "unwarranted infringement of property rights," for it would "diminish [those] rights without significantly enhancing the asserted right of free speech." *Lloyd Corp., 407 U.S. at 567*.  *See Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 578 (1977).  It follows that the District Court did not violate Novak's First Amendment rights by issuing the injunction.  *See Lloyd Corp.,* 407 U.S. at 567-70 ("accommodations" must be made between speech and property rights); *Zacchini,* 433 403 U.S. at 569-79 (resolution of conflicts between speech and property rights requires balancing of interests).

## CONCLUSION

Based upon the foregoing and the reasons set forth in our opening brief, Plaintiff respectfully requests that the Court grant its motion for entry of a preliminary injunction.

Dated:  January 19, 2010

Respectfully submitted,

/s/ Michael A. Kahn_____
David A. Roodman (#5116)
Michael A. Kahn (#3506)
BRYAN CAVE LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri  63102-2750
Telephone: 314-259-2614
Facsimile:  314-259-2020
Daroodman@bryancave.com
Michael.Kahn@bryancave.com

G. Roxanne Elings (GE 8321)
Heidi Garfield (HG 4224)
GREENBERG TRAURIG LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Attorneys for Plaintiff
The North Face Apparel Corp.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record on this 19th day of January 2010.

/s/ Michael A. Kahn_____