UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE NORTH FACE APPAREL CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV2029 RWS |
| ) | |
| WILLIAMS PHARMACY, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter is before me following my review of the parties' briefs relating to plaintiff's pending motion for contempt, currently set for hearing October 15, 2012. North Face moves for a finding of civil contempt against defendant Winkelman, his father (Winkelman Sr.), and a new corporate entity formed by Winkelman Sr., Why Climb Mountains. Winkelman Sr. and Why Climb Mountains are intervenors in this case and admit that the consent injunction entered in this case applies to them. Therefore, when I talk about "defendants" in the rest of the opinion, I am also referring to the intervenors in addition to Winkelman and South Butt. The consent injunction at issue in this case [#71] was signed by me on April 12, 2010. It resolved an underlying trademark infringement action[1] brought by North Face against Winkelman and South Butt, another Winkelman Sr. company, over defendants' South Butt products. Among other things, it enjoins defendants from:

> using, without the express written permission of The North Face, any of The South Butt Marks or any other reproduction, counterfeit, copy, or colorable imitation of the North Face trademarks, either alone or in combination with any other designation, on or in connection with any advertising, marketing, promoting,

---

[1] North Face also brought claims for false designation of origin, trademark dilution, and unfair competition.

>    distribution, offer for sale, or sale of services or goods . . . .
>
>    using . . . any other designation that is confusingly similar to any of the North Face trademarks, including, but not limited to the South Butt trademarks, in any manner as to be likely to dilute, cause confusion, deception or mistake on or in connection with the manufacturing, advertising, distributing, offering for sale or selling of any product not The North Face's . . .
>
>    diluting and infringing The North Face trademarks, and damaging The North Face's goodwill . . .
>
>    otherwise competing unfairly with The North Face in any manner . . . [and]
>
>    conspiring with, aiding, assisting or abetting any other person or business entity in engaging in or performing any of the activities referred to above.

Defendants do not dispute that within two days of the entry of the consent injunction, Winkelman, Sr. formed Why Climb Mountains, which sells products using "The Butt Face" mark and accompanied by the tagline, "Never Stop Smiling."  The North Face contends that these activities violate the consent injunction and seek a finding of civil contempt.

"[I]t is firmly established that the power to punish for contempt is inherent in all courts." Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991).  Absent the ability to hold a party in contempt for wilful violations of court orders, a court is made "impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." United States v. United Mine Workers, 330 U.S. 258, 290 n. 56 (1947) (internal citation omitted).  "A party seeking civil contempt bears the initial burden of proving, by clear and convincing evidence, that the alleged contemnors violated a court order." Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 505 (8th Cir. 2000).  "Civil contempt may be employed either to coerce the defendant into compliance with a court order or to compensate the complainant for losses sustained, or both."  Id.   Once the North Face comes forward with

clear and convincing evidence that there is a specific and definite Order of this Court and that defendants have violated that Order, the burden shifts to defendants to show that compliance is presently impossible. Id.; see also F.T.C. v. Neiswonger, 494 F. Supp. 2d 1067, 1080-81 (E.D. Mo. 2007). "To show that compliance is presently impossible, the defendant must demonstrate: (1) that they are unable to comply, explaining why categorically and in detail, (2) that their inability to comply was not self-induced, and (3) that they made in good faith all reasonable efforts to comply." Chicago Brotherhood, 207 F.3d at 506.

In addition to admitting that the consent injunction applies to them, defendants also admit that the consent injunction is a "specific and definite order" of this Court. The only dispute is whether the defendants have violated that Order. Based on the evidence presented to the Court thus far in support of the motion, I expect the North Face to easily meet this burden at the hearing. Despite the parties' lengthy recitation of trademark law and defendants' continued insistence that its activities are protected as parodies, those issues are not before the Court. The only issue is whether defendants violated the terms of the consent injunction, which they do by using marks that are "colorable imitations of" the North Face trademarks. See Wella Corp v. Wella Graphics, Inc., 37 F.3d 46, 48 (2d Cir. 1994). The consent injunction does not define "colorable imitation," but the term in trademark law means "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive." 15 U.S.C. §§ 1127. However, as I have previously stated, plaintiff is not required to establish infringement in this proceeding, as the issue is whether defendants violated a consent judgment. The Second and Ninth Circuit Courts of Appeals have concluded that, in that instance, a plaintiff "who already has a judgment establishing that the defendant has infringed is not required to muster all of the

evidence it would need to make out an original infringement case in order to prove contempt." Wolford Glassblowing Co. v. Vanbragt, 118 F.3d 1320, 1322 (9th Cir. 1997); Wella, 37 F.3d at 48 (sole issue in contempt proceeding is whether defendant violated injunction, and "when enforcing injunctions that enjoin the use of any mark confusingly similar to the protected mark, courts should not adjudicate issues such as product proximity but should simply evaluate whether or not the new mark is confusingly similar to the protected mark, regardless of the products on which the marks are used."). To require otherwise would deprive plaintiff of its incentive to settle the underlying infringement case. Id. Although defendants argue that the North Face must present evidence of confusion in the marketplace to prevail, "to establish a violation of this consent decree, [plaintiff] need not prove a likelihood of consumer confusion in the same manner that we would require in a trademark infringement case." Wolford, 118 F.3d at 1322-23. This means that North Face is not required to present expert testimony of consumer confusion between the North Face and the Butt Face marks to meet its burden in this case. This conclusion is consistent with the "safe distance" rule, which defendants now concede applies. See Doc. #106 (Defs.' Proposed Findings of Fact) at Para. 8 ("where an individual or entity has been enjoined from infringing a plaintiff's mark(s), the infringer may be required to keep a 'safe distance' from the plaintiff's mark(s)."

So how am I to decide whether the Butt Face marks are a "colorable imitation" of the North Face marks? That is the question the parties must address before the hearing. I will require the parties to provide supplemental briefs on this issue which set out the standards I should apply when deciding this issue, as well as whether my visual inspection of the two marks is sufficient for this purpose. The Ninth Circuit determined that the district court's visual

inspection of the two products in Wolford was sufficient, in conjunction with counsels' arguments, to determine that the defendant's product was a "colorable imitation" of the plaintiff's product such that it violated the terms of the consent injunction. See id. at 1323. If the parties disagree with this standard, they must explain why and provide me with an proposed alternative standard to apply.

      Finally, I write to address defendants' argument that laches should preclude a contempt finding in this case. Plaintiff acknowledges, as it must, that laches is an available defense to a finding of contempt when it asks me to exercise its inherent authority and enter equitable remedies. Plaintiff also acknowledges that this is a fact-dependent inquiry. The facts surrounding this issue appear to be hotly contested and I will await the hearing before reaching any conclusions on the merits of any such defense. However, it must be pointed out that even if laches does not preclude a finding of contempt, plaintiff's delay in seeking enforcement of the injunction may be relevant to the damages it seeks, which includes disgorgement of profits and attorneys' fees. I must evaluate the entitlement to some, or any, of these claimed damages against the backdrop that plaintiff chose to sit on its rights for some time after discovering defendants' conduct. This factor may prevent the plaintiff from obtaining the full amount of damages it seeks. If, as they claim, defendants want nothing more to do with plaintiff I believe this matter can be resolved without incurring any additional added expense to the parties and without wasting any more judicial resources. Therefore, I expect the parties to talk about settlement in good faith when they receive this Order and, if they do not resolve their pending dispute, they will be required to report on the status of these negotiations before the start of the hearing. In other words, it's time to stop smiling and start exploring a sensible resolution to this

dispute.

Accordingly,

**IT IS FURTHER ORDERED** that the parties will file supplemental briefs as set out in this Order by not later than **noon on Friday, October 12, 2012.**

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2012.